IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2014

## DEMOND HUGHLETT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 7167     Honorable Joseph H. Walker, III, Judge**

---

**No. W2013-02159-CCA-R3-PC  - Filed November 19, 2014**

---

The Petitioner, Demond Hughlett, appeals the denial of his petition for post-conviction relief. He argues that counsel was ineffective in failing to obtain a determination from a medical expert or the court regarding his competency to stand trial and in failing to inform him of his right to file a motion to reduce his sentence or to appeal his sentence. The Petitioner also argues that counsel's errors rendered his guilty plea involuntary and unknowing. Upon review, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Lyle A. Jones, Covington, Tennessee, for the Petitioner, Demond Hughlett.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; D. Michael Dunavant, District Attorney General; and Jason R. Poyner, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Plea Submission Hearing.** At the May 10, 2012 guilty plea hearing, the State asserted that on June 3, 2011, the Petitioner knowingly delivered .28 grams of cocaine within a thousand feet of a daycare in Covington, Tennessee. The Petitioner stipulated to the State's recitation of the factual basis supporting his plea.

The Petitioner stated that he was twenty-six years old and had a tenth grade education. He said he had discussed the plea agreement with counsel and understood the terms of the plea. He also said he wanted to enter a plea of guilty and was waiving his right to a trial by

jury and his right to an appeal. The trial court informed the Petitioner that he was charged with a Class B felony, which had a sentence range of twelve to twenty years, and was requesting that he be allowed to enter a guilty plea to a Class C felony, which carried a range of six to ten years, although the State had recommended a ten-year sentence in his plea agreement. See T.C.A. § 40-35-112. The trial court further informed the Petitioner that his conviction in this case, along with his prior convictions, could be used to enhance his punishment for future offenses. The Petitioner asserted that no one had forced him to enter his guilty plea and that he was voluntarily entering his plea after discussing his case with counsel because he was guilty of the offense. He said he was satisfied with counsel's performance. The Petitioner then entered his guilty plea to the offense of delivery of less than .5 grams of cocaine. When the trial court asked the Petitioner if he had any questions, the Petitioner asked about whether he could receive a sentence of probation, and counsel explained on the record that a hearing regarding his request for probation would occur at a later date. Although the Petitioner was charged with delivery of less than .5 grams of cocaine in a school zone, a Class B felony, the court accepted his guilty plea to delivery of less than .5 grams of cocaine, a Class C felony, in exchange for a sentence of ten years as a Range II, multiple offender, with the manner of service of the sentence to be determined at a later hearing. See T.C.A. §§ 39-17-417, -432, 40-35-112. Because the Petitioner was on parole in another case at the time he committed the offense in this case, his ten-year sentence was required to be served consecutively to his prior sentence. See Tenn. R. Crim. P. 32(c)(3)(A) (requiring consecutive sentencing for a felony committed while on parole for a felony). The trial court later ordered that he was to serve his ten-year sentence in confinement.[1]

**Post-Conviction Hearing.** At the August 16, 2013 post-conviction hearing, the State entered Dr. John Hutson's letter to counsel, the guilty plea transcript, and the presentence investigation report as exhibits. Counsel testified that she was an assistant public defender and began representing the Petitioner after he was indicted. She obtained discovery and reviewed the lab report detailing the amount of cocaine involved in this case as well as the videotape of the drug transaction. Based on the information she received from the Petitioner's family, counsel investigated the Petitioner's competency to stand trial. She also investigated the credibility of the criminal informant involved in the drug transaction. Counsel said that although the video recording of the incident was of a poor quality and did not show "a hand to hand transaction," two police officers had witnessed the exchange of drugs.

---

[1] Although the record indicates that the trial court denied the Petitioner's request for probation or house arrest at a later hearing, a copy of the transcript from this hearing was not included in the record on appeal.

When counsel investigated the Petitioner's competency to stand trial, the Petitioner informed her that he had been recently hospitalized at Lakeside for mental health issues. She filed a motion to obtain funds for an expert and contacted Dr. John Hutson, a clinical psychologist, to conduct an evaluation of the Petitioner. She said Dr. Hutson met with her and the Petitioner for approximately two hours at the Hardeman County Correctional Facility. While there, she had the Petitioner sign a medical release for all of the facilities where he had been treated, and Dr. Hutson obtained these medical records. She said she never viewed the Petitioner's medical records because they were sent directly to Dr. Hutson. Counsel never scheduled any hearings to consider the Petitioner's competency at the time of the offense or his competency to stand trial because Dr. Hutson did not believe that the Petitioner had any issues regarding competency. Counsel stated that Dr. Hutson's letter "put the burden [of determining competency to stand trial] on me more so than on himself." She said Dr. Hutson "felt so long as I felt that [the Petitioner] was capable of working with me that he could recommend that he [was] competent if we [were] working together." She acknowledged that she had never received any training in psychiatry or mental health. Counsel stated that one of the reasons that Dr. Hutson did not believe that the Petitioner had any competency issues was that competency had already been addressed in a prior criminal case:

> I spoke with Dr. Hutson in depth on this issue, and one of the reasons he cited that he did not think there was a competency issue was that the issue had already been looked at in previous cases. I think that [the Petitioner] had already been sent either to Pathways or Western State, possibly both, and that those records indicated that he was found competent at the time.

When she received Dr. Hutson's letter regarding the Petitioner's competency, she discussed the contents of this letter with the Petitioner and discussed the possibility of a plea agreement.

Counsel stated that before the Petitioner's competency evaluation, the State had presented an offer of twelve years with a release eligibility of thirty-five percent. Following the competency evaluation, the State presented an offer of ten years with a release eligibility of thirty-five percent. Counsel informed the Petitioner that the offer of ten years was a good one; however, she continued to prepare for trial. She discussed the nature of the charges and the possible penalties for these charges with the Petitioner in the presence of Dr. Hutson for approximately two hours. She explained that any sentence the Petitioner received on this charge would be served consecutively to the unserved portion of his prior sentence because he had committed the instant offense when he was on parole. She also informed him that the charge in this case and his other charge in an unrelated case would revoke his parole. She was confident that the Petitioner understood what they had discussed because she asked him

-3-

to tell her how the judicial process worked, what a plea agreement was, and if there was an offer he wanted to accept.

Counsel said she talked to Dr. Hutson about testifying at trial, at a competency hearing, or at a sentencing hearing when she asked him to get involved in this case. Although Dr. Hutson agreed to testify at a competency hearing if he were needed, counsel never scheduled a competency hearing because, based on her conversations with Dr. Hutson, she "didn't feel like his opinion was going to definitively prove that [the Petitioner] was not competent to stand trial." While acknowledging that the Petitioner had shown some evidence of intellectual limitations and confused or confounded thinking during Dr. Hutson's evaluation, counsel said Dr. Hutson had opined that the Petitioner had exaggerated his psychiatric problems. Moreover, while acknowledging that Dr. Hutson's testimony could have been helpful in providing mitigation proof at the sentencing hearing, she asserted that the Petitioner and his mother were able to provide proof of his intellectual disabilities. Counsel recognized that the Petitioner's presentence report showed the Petitioner had been diagnosed with schizophrenia, bipolar disease, and attention deficit disorder and had received treatment for two weeks at Lakeside for these mental health issues. Counsel stated that if she were able to handle the case again, she still would not have scheduled a competency hearing because she did not believe that Dr. Hutson would have opined that the Petitioner was not competent to stand trial. Instead, she encouraged the Petitioner to consider the plea agreement because he was facing a sentence with a release eligibility of one hundred percent based on his charge of delivery of drugs in a school zone, which would have required prison time. She said that with the offer of ten years at thirty-five percent, the Petitioner had a chance of receiving probation. However, she acknowledged that the trial court ultimately denied the Petitioner probation. Counsel said she did not appeal the sentence because she informed the Petitioner that it was "unlikely we'd get a different result[.]" She also said she did not file any motions to reduce the sentence under Rule 35 of the Tennessee Rules of Criminal Procedure. Counsel said she did not give the Petitioner any information about how he could appeal his case pro se.

The Petitioner testified that he did not recall any conversations that he had with counsel and only recalled her face. He did not remember counsel working with him on his charge. He also did not remember counsel telling him that he could appeal his sentence or file a motion to reduce his sentence. The Petitioner said counsel mentioned that he could be transferred to the state mental hospital one time, and he never heard anything more about it. When he was asked if he remembered filing his post-conviction petition, he said, "Somebody helped me with that, sir." When he was asked if he recalled his plea submission hearing, the Petitioner responded, "Oh, let me see. I think I'll say yeah. I didn't understand nothing that was going on." He said counsel just wanted him to "get a plea," although he did not understand what a plea was. The Petitioner said he told the trial court at the plea submission

hearing that he understood what he was doing by entering his plea, even though he did not understand the consequences of pleading guilty.

Following the hearing, the post-conviction court accredited the Petitioner's statements during the plea colloquy over his testimony at post-conviction hearing. After considering the evidence from the plea submission hearing and the post-conviction hearing, the court held that the Petitioner had failed to establish that counsel's performance was deficient or prejudicial or that his plea was unknowing or involuntary.

## **ANALYSIS**

The Petitioner argues that counsel was ineffective in failing to obtain a determination from a medical expert or the court regarding his competency to stand trial and in failing to inform him of his right to file a motion to reduce his sentence or to appeal his sentence. The Petitioner also argues that counsel's errors rendered his guilty plea involuntary and unknowing. We conclude that the court properly denied post-conviction relief.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, "the petitioner must show that, but for counsel's errors, he would not have entered into the sentencing agreement." Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W.3d at 562. To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a

guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

The Petitioner asserts that his plea was unknowingly and involuntarily entered without the effective assistance of counsel. He claims counsel did not obtain a determination from a medical expert or the court regarding his competency to stand trial and did not inform him of his right to file a motion to reduce his sentence or his right to appeal his sentence.

We conclude the court properly denied post-conviction relief. The record shows counsel obtained the services of Dr. Hutson, a clinical psychologist, to evaluate the Petitioner's competency to stand trial. Dr. Hutson opined that as long as "[the Petitioner was] working with [counsel] and [was] capable of working with [counsel]," he was "competent to proceed with the disposition of his charges." Although the Petitioner was charged with a Class B felony and faced a sentence of twelve to twenty years with a release eligibility of one hundred percent, counsel was able to negotiate a plea deal to a Class C felony in exchange for a ten-year sentence with a release eligibility of thirty-five percent, which was ultimately accepted by the trial court. While counsel acknowledged that she did not appeal the Petitioner's sentence and did not file any motions to reduce his sentence, she asserted that it was "unlikely we'd get a different result" had she done so. We note that any relief on appeal regarding the Petitioner's sentence would have been limited to whether the trial court should have imposed an alternative sentence rather than a sentence of confinement because the manner of service of the ten-year sentence was the only sentencing issue not covered by the plea agreement. See Tenn. R. Crim. P. 37(b)(2)(B). Moreover, it is unlikely that the Petitioner would have received any relief from his plea agreement at the trial court level because Rule 35(b) only permits modification of a sentence in the interest of justice. See Tenn. R. Crim. P. 35(b), Advisory Comm'n Comment; State v. McDonald, 893 S.W.2d 945, 947 (Tenn. Crim. App. 1994). We fail to see how the Petitioner was prejudiced by counsel's failure to seek relief on his sentence, given his extensive criminal history involving drug offenses. The Petitioner, at the time he entered his guilty plea in this case, had violated his parole on a twenty-two-year sentence for multiple cocaine convictions by committing the

cocaine offense in this case. The transcript from the plea submission hearing shows that the trial court properly advised the Petitioner of his rights, the charge against him, and the consequences of entering a guilty plea and demonstrates that the Petitioner was satisfied with counsel's performance. Moreover, the evidence at the post-conviction hearing establishes that the Petitioner entered his guilty plea because he was in fact guilty of the charged offense, which was memorialized in a videotape of the drug transaction, and because he was facing a substantially harsher sentence if convicted at trial. Although the Petitioner claims that expert testimony would have established he was incompetent to stand trial, he failed to present any expert witnesses at the post-conviction hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (concluding that a post-conviction petitioner generally fails to establish his claim that counsel did not properly investigate or call a witness if the petitioner did not present the witness to the post-conviction court because "neither a trial judge nor an appellate court can speculate or guess [about] what a witness's testimony might have been if introduced"). Accordingly, we agree with the post-conviction court that the Petitioner failed to establish that counsel's performance was ineffective or that the plea he entered was unknowing, involuntary, or unintelligent.

## CONCLUSION

The Petitioner has failed to establish that he received ineffective assistance of counsel or that his guilty plea was unknowingly, involuntarily, or unintelligently entered. The denial of post-conviction relief is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE